UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| JOSHUA CHIARELLO SHARPE,<br><br>                Plaintiffs,<br><br>     v.<br><br>PETER STURDEVANT; FRANK SERRANO,<br><br>                Defendants. | Case No.:2:14-CV-01265-AC<br><br>FINDINGS & RECOMMENDATION |

ACOSTA, Magistrate Judge:

Plaintiff Joshua Sharpe ("Sharpe") is a prisoner incarcerated by the Oregon Department of Corrections ("ODOC"). In August 2012, Sharpe assaulted another inmate, who required significant medical treatment for his severe injuries. After a disciplinary hearing, Sharpe was adjudged guilty of disciplinary infractions, and the hearings officer assessed an award of restitution of the cost of the other inmate's medical treatment. Sharpe now brings claims against Defendants Peter Sturdevant ("Sturdevant") and Frank Serrano ("Serrano") ("Defendants"), the hearing officers involved in Sharpe's disciplinary hearings, under § 1983 for violation of his right to procedural due process.

FINDINGS & RECOMMENDATION - 1                                                           [RMD]

Because Defendants did not violate Sharpe's due process rights during the disciplinary process, the court should grant Defendant's Motion for Summary Judgment.

*Factual Background*

On August 27, 2012, Sharpe's cell and the cells adjacent to Sharp's were sanitized. (Declaration of Frank Serrano ("Serrano Decl.") Ex. 1 at 1.) Corrections officers removed Sharpe and the inmates housed near him from their cells and directed them to wait in the hallway during the sanitation process. (*Id.*) While corrections officers were in another part of the cell-block, Sharpe began assaulting another inmate with "numerous closed fist strikes." (*Id.* at 8.) Corrections officers who responded to the disturbance observed Sharpe attempt to push his victim over the protective railing and down onto the cement floor below. (*Id.*) Corrections officers arrived on the scene, and Sharpe refused to stop his assault until the officers threatened the use of pepper spray. (*Id.*) The victim suffered significant facial trauma and required "extensive dental surgery by an outside provider." (*Id.* at 11.)

Sharpe was taken to segregated housing and charged with Inmate Assault I, Disobedience of an Order I, and Unauthorized Area I. (*Id.*) He was given written notice of the charges against him, which he denied. (*Id.* at 1.) On September 12, 2012, Hearings Officer Sturdevant held a disciplinary hearing on Sharpe's charges. (Serrano Decl. Ex. 2.) Sharpe did not present any evidence or witness testimony in his defense; he relied on his unsupported contention that he did not unilaterally attack the victim but that both he and the victim participated in a "mutual" fight. (*Id.*)

Based on the available evidence, Sturdivant dismissed the Unauthorized Area I charge and Disobedience of an Order I charge. (Serrano Decl. Ex 1 at 3, Ex. 2 at 4.) Sturdivant also dismissed the Disobedience to an Order I charge, but convicted Sharpe of the lesser included offense of

Disobedience of an Order II. (*Id.*) Sturdevant also found Sharpe guilty of committing Inmate Assault I. (*Id.*) For Sharpe's violations, Sturdivant imposed a suspended sentence of 120 days segregation and fourteen days' loss of privileges. Sturdevant also sentenced Sharpe to a $100.00 fine and stripped Sharpe of almost fifty-four days' good-time credit. (*Id.*)

Later in September 2012, Sturdevant ordered Sharpe's case reopened "to determine if restitution should be ordered." (Serrano Decl. Ex. 1 at 2.) Although Sturdevant made no additional findings of fact or conclusions, he amended his original disciplinary order to include the following:

> The Hearings Officer was ordered to re-open this hearing to consider additional information regarding outside medical costs incurred by this inmate's victim of assault that was not available at the time of the original hearing. The hearing was re-opened to consider this information. The Hearings officer amended the Preliminary order to include restitution for the emergency medical costs with the cost to be determined.

(*Id.* at 3.) Sharpe was informed of ODOC's intention to impose a restitution penalty. On March 14, 2013, Sharpe requested evidence to prepare for his defense, including the victim's "medical records, pictures of [the] victim . . . and scene of misconduct, [a] list of all parties involved to call witnesses (medical staff, security staff and inmates) and all invoices of finances involved." (*Id.* at 18.) ODOC did not supply Sharpe with the evidence and witness lists he requested. On March 19, 2013, a new hearing was held to consider the amount Sharpe should be ordered to pay in restitution. (*Id.*) Serrano conducted the hearing in Sturdevant's place, and provided an itemized list of the victim's medical costs. He explained:

> Again, that information is oral surgeon, $3,638; anesthesiologist, $859.74; West Valley medical Center, obviously where the individual stayed, was $18,011.19; Imaging Center of Idaho, which is obviously the CT scan, was $428 and the cardiology report was $19, for a total of $22,955.93. That is the information I have Mr. Sharpe.

(Serrano Decl. Ex. 3 at 2.) Sharpe disputed that all the victim's injuries occurred during the assault in question and requested copies of the medical invoices to verify the amount. (*Id.* at 2.) Serrano told Sharpe that, because he was already found guilty of the disciplinary charges, the hearing's only purpose was to determine how much he owed, and that Sharpe would not be given the evidence against him at the restitution hearing unless and until he appealed the decision to the Inspector General's office. (*Id.* at 3.) Further, despite his request for witness lists, Sharpe did not request at the hearing that witnesses testify on his behalf. (*Id.* at 1-4.)

*Legal Standard*

A court should grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of establishing that no genuine issues of fact exist and that the nonmovant cannot prove one or more essential elements of a claim or defense. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the movant meets his burden, the nonmovant must "go beyond the pleadings [ ] by her own affidavits . . . [to] designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks omitted). Conclusory allegations which are unsupported by factual material such as affidavits and documentary evidence are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

On summary judgment, the court is bound to view all facts in a light most favorable to the nonmovant and must draw all justifiable inferences in the nonmovant's favor. *Narayan v. EGI, Inc.*, 616 F.3d 895, 899 (9th Cir. 2010). Further, where, as here, the nonmoving party to a motion for summary judgment is a *pro se* litigant, the court must "construe liberally the filings and motions."

*Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

*Discussion*

Sharpe filed this § 1983 claim against Defendants alleging violations of his procedural due process related to the restitution hearing. Specifically, Sharpe contends he was entitled: (1) to a hearing presided over by a "bar approved judge;" and (2) to receive an "itemized" list of the restitution award prior to the disciplinary hearing; and (3) to require Defendants produce witnesses in his favor who could testify regarding the medical bills at issue. Defendants move for summary judgment and argue they did not deny Sharpe his right to procedural due process. Further, they contend that, even if Sharpe's constitutional rights were violated, Defendants are entitled to qualified immunity.

"Under the Fourteenth Amendment's Due Process Clause, a prisoner is entitled to certain due process protections when he is charged with a disciplinary violation." *Serrano v. Francis*, 345 F.3d 1071, 1077-78 (9th Cir. 2003) (citing *Wolff v. McDonnell*, 418 U.S. 539, 564-71 (1974). Of course, "[l]awful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen," and although prisoners still retain Constitutional protections of religious freedom, access to the court, equal protection, and substantive due process, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 555-56. For example, unlike a defendant's silence in a criminal proceeding, a prisoner's silence at a disciplinary hearing may be used against him. *Baxter v. Palmigiano*, 425 U.S. 308, 316-18 (1976). Similarly, prisoners "do not 'have a right to either retained or appointed counsel in disciplinary hearings.'" *Id.* at 315 (quoting *Wolff*, 418 U.S. at 570).

FINDINGS & RECOMMENDATION - 5                                                                       [RMD]

In *Wolff*, the Supreme Court discussed the due process requirements of a prison disciplinary hearing. First, prison officials must provide the prisoner with written notice at least twenty-four hours before the hearing. *Wolff*, 418 U.S. at 564. This notice must include the charges against the inmate, a written description of the evidence on which the factfinder relies, and the reason for taking disciplinary action. *Id.* Second, prison officials should allow the prisoner "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 566. Third, if the prisoner is illiterate, or if the complexity of the case makes comprehension unlikely, prison officials should allow the prisoner to "seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff." *Id.* at 570.

Defendants do not dispute that Sharpe had a property interest in the $22,955.93 restitution award. Therefore, the court will discuss only whether Sharpe is entitled to a "bar approved judge," the right to an itemized list of the victim's medical invoices, and the right to call witnesses under the Due Process clause.

I. Right to a Bar-Approved Judge

Sharpe contends he was entitled to a disciplinary hearing before a "bar approved judge." The right to a hearing conducted by a judge was not among the rights the Supreme Court recognized in *Wolff*. Moreover, no authority exists for the proposition that prison disciplinary hearings must be heard by an attorney, much less a sworn judge. Therefore, it was not a violation of Sharpe's due process rights for Sturdevant and Serrano to conduct the disciplinary hearings at issue in this case.

II. Itemized List of Expenses

Sharpe next argues he is entitled to an itemized list of the victim's medical bills so he could dispute the amount of the restitution award. Defendants do not discuss Sharpe's request for an itemized list of medical expenses, but contend Sharpe's due process rights were not violated because he was given a hearing on the issue of restitution. Further, Defendants argue that, even if Sharpe's procedural due process rights were violated, they are entitled to qualified immunity.

During the restitution hearing, Sharpe was entitled to the three rights guaranteed by the Supreme Court in *Wolff*. Of note, *Wolff* provides that an "inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566.

In an inmate communication Sharpe sent five days before his hearing, he requested copies of all medical records and invoices related to the victim's treatment, as well as the names of possible witnesses who could testify regarding the medical costs. It is unclear when, but at some point, Sharpe was provided a list of the various medical expenses at issue identified by the provider who billed each expense. (Sharpe Decl. Ex. 1 pg. 8.[1]) This list was also read into the record at Sharpe's second hearing. (Serrano Decl. Ex. 3 at 2.) However, the record suggests Sharpe did not obtain this evidence until after his restitution hearing, as during the hearing itself Serrano told Sharpe that he could obtain the evidence and witness lists he requested only if he appealed the decision to the Inspector General's office. (*Id.* at 2-3.)

---

[1] The exhibits attached to Sharpe's Declaration in Support are not labeled, nor are the pages numbered. Therefore, the court treats the attachments as one exhibit, and will cite to each page where necessary.

FINDINGS & RECOMMENDATION - 7                                            [RMD]

Sharpe's claim, to the extent it relies on his request for itemized medical bills, fails because providing Sharpe with the documents he sought is inconsistent with ODOC correctional goals and state law. Under *Wolff*, Sharpe had the right to present documentary evidence so long as doing so is consistent with institutional safety and correctional goals. Except in limited circumstances inapplicable to this case, it is unlawful for prison officials to release "written accounts" of prisoners' medical treatment. OR. REV. STAT. § 179.505. "Written accounts" are defined as records containing "individually identifiable health information." OR. REV. STAT. § 179.505(1)(h). Thus, under the statutory definition, the itemized list of medical treatments given to Sharpe's victim constitute "written accounts" which may not be disclosed under to Oregon law. There is a clear governmental interest in protecting prisoner's medical records, and disclosing the "itemized list" of medical treatments would not comport with the institutional goals of ODOC. Because releasing details of the victim's medical treatment would be unlawful and inconsistent with ODOC correctional goals, it was not a violation of Sharpe's due process to deny his request.

III. Right to Call Witnesses

Sharpe contends Defendants denied him due process by denying his request for witnesses who could affirm or deny the accuracy of the medical bills giving rise to his restitution payment. Defendants contend Sharpe had no due process right to compel Defendants to produce witnesses with knowledge of the medical records.

"An inmate's limited right to call a witness is subject to the necessary discretion of prison officials to keep the hearing within reasonable limits and refuse to call witnesses that may create the risk of reprisal or undermine authority." *Pickett v. Williams*, Civil No. 09-689-TC, 2011 WL 4913573, at *4 (D. Or. Aug. 23, 2011) (quoting *Wolff*, 418 U.S. at 566) (brackets and internal

quotation marks omitted). A hearings officer may refuse an inmate's request for witness testimony "whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases." *Wolff*, 418 U.S. at 566. In the "NOTICE OF HEARING/INMATE RIGHTS" provided to Sharpe before his initial hearing, the inmate is instructed:

> Submit your request for witnesses to the hearings officer, in writing, in advance of the hearing, and include a list of the person(s) you are requesting be called to testify and the questions sought to be posed to each person. Requests for witnesses must minimally be made to the hearings officer at the time of the hearing. You must provide the hearings officer with sufficient evidence to conclude that the results of the investigation and/or the testimony provided by witnesses will either constitute a defense to the charge(s) or substantially lessen the severity of the violation(s). Otherwise, the hearings officer may deny your request

(Serrano Decl. Ex. 1 at 9.)

Sharpe's request for witnesses to appear at the restitution hearing did not comply with the "NOTICE OF HEARING/INMATE RIGHTS." Sharpe does not specifically identify by name the witnesses he sought to call or what they would say if called to testify. The inmate communication form Sharpe sent prior to his restitution hearing asked only for a "list of all parties involved to call witnesses (medical staff security staff and inmates) . . . ." (Serrano Decl. Ex. 1 at 18.) Sharpe did not provide the hearings officer with the names of those he wished to call as witnesses, and he presented no evidence, testimonial or otherwise, to suggest the testimony of the unnamed witnesses would constitute a defense, demonstrate the existence of mitigating factors, or otherwise convince the hearings officer to reduce the restitution award.

The hearings officer was also justified in rejecting Sharpe's request to identify, then call, witnesses on Sharpe's behalf because evidence on the record sufficiently demonstrated the causal link between the victim's injuries resulting from the assault and the restitution payment levied against Sharpe after the second hearing. The record of Sharpe's disciplinary case contains a copy

FINDINGS & RECOMMENDATION - 9                                                                                          [RMD]

of an email exchange among several prison officials. (Serrano Decl. Ex. 1 at 15-16.) The emails explain that Sharpe's victim required significant medical treatment following "an altercation in Complex 3." (*Id.* at 15.) That email exchange also includes a breakdown of the victim's medical providers and the cost each provider charged for treatment. (*Id.*) Sharpe produced no evidence to suggest his witnesses would offer testimony which called into question the amount those providers charged for the victim's medical care or the source of the victim's injuries. Therefore, Sharpe's procedural due process rights were not violated by Serrano's refusal to call Sharpe's witnesses. Because the court concludes Sharpe's claims fail as a matter of law, it need not address Defendants' remaining argument that they are entitled to qualified immunity.

*Conclusion*

For the aforementioned reasons, the court should GRANT Defendants' Motion for Summary Judgment (Dkt. No. 30) and dismiss Sharpe's claims with prejudice.

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due on January 11, 2016. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, then a response is due within fourteen days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 22nd day of December, 2015.

/s/ John V. Acosta
JOHN V. ACOSTA
United States Magistrate Judge